NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CURTIS A. DUKES, <br><br> Plaintiff, <br><br> v. <br><br> NEW JERSEY TRANSIT CORP., and VICKEY FRASER, <br><br> Defendants. | Civil Action No.: 16-08947 (CCC) <br><br> OPINION |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on the motion of Defendant New Jersey Transit Corporation ("NJT," "Defendant") (ECF No. 6) to dismiss multiple causes of action in the Complaint (ECF No. 1 ("Compl.")) and the Amended Complaint (ECF No. 3 ("Amnd. Compl")) filed by Plaintiff Curtis A. Dukes ("Plaintiff").[1] The Court has considered all submissions made supporting and opposing the instant motion, including Plaintiff's Opposition Brief (ECF No. 14) and NJT's Reply Brief (ECF No. 15). The Motions are decided without oral argument pursuant to Fed. R. Civ. P. 78(b).[2] For the reasons set forth below, NJT's Motion to Dismiss is granted.

## II. BACKGROUND

Defendant NJT withdrew Plaintiff's offer of employment on December 26, 2014, for what Plaintiff claims were discriminatory and retaliatory reasons. (Compl. ¶ 6). Plaintiff is an African-

---

[1] Plaintiff's Amended Complaint appears to be a supplementation of his initial Complaint.
[2] The Court considers any new arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991).

1

American man and a U.S. Citizen who applied for work with NJT as a driving instructor. (*Id.* ¶¶ 2, 7). Defendant New Jersey Transit Corp. is a state-owned public transportation system that serves the State of New Jersey, along with portions of New York State and Pennsylvania. Vickey Fraser is an employee of NJT who Plaintiff attempts to join, unsuccessfully, as a defendant in the present action.[3]

A.  **Procedural History**

Plaintiff commenced this action on December 1, 2016, in the United States District Court for the District of New Jersey. (ECF No. 1). On December 9, 2016, Plaintiff properly filed an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(1). (ECF No. 3). The Complaint and Amended Complaint purport to set forth seven causes of action[4]: (1) Race

---

[3] Plaintiff offers no evidence that Fraser has been properly served in this action, and the Court shall therefore not address any of these claims as made against her. Plaintiff presents a certified mail receipt (ECF No. 4 at 3) indicating a certified letter was sent to "New Jersey Transit; Vickey Fraser; 180 Boyden Ave; Maplewood, NJ 07040" on Dec. 1, 2016. While the New Jersey Rules of Court allow for service by certified mail, such service is only permitted in situations where "personal service cannot be effected after a reasonable and good faith attempt, which shall be described with specificity in the proof of service required by R.4:4 7 [of the New Jersey Rules of Court]." N.J. Ct. R. 4:4-3(a). *See also* N.J. Ct. R. 4:4 4(b)(1)(C) ("If it appears by affidavit satisfying the requirements of R. 4:4-5(b) that despite diligent effort and inquiry personal service cannot be made in accordance with paragraph (a) of this rule, . . . [service may be effectuated by] mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode." Plaintiff did not file an affidavit showing that "despite diligent effort and inquiry, personal service cannot be made." *See* N.J. Ct. R. 4:4-4(a). Nor did Plaintiff "describe with specificity" any "reasonable and good faith attempt" that was made to effect personal service. *See* N.J. Ct. R. 4:4-3(a). Moreover, Plaintiff did not serve Fraser at her dwelling house or usual abode. Therefore, Plaintiff's attempted service was improper to establish personal jurisdiction over Fraser, and Plaintiff's proof of service is insufficient.

[4] This overview merely attempts to set forth the apparent causes of action as Plaintiff pleads them. Not all causes listed here are applicable or with merit, and the Court will address these shortcomings in its Discussion, *infra*.

discrimination and retaliation for protected activities (in violation of 42 U.S.C. §§ 1981 and 1983;[5] New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("NJLAD"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); common law of torts; and the First, Fourth and Fourteenth Amendments of the U.S. Constitution[6]); (2) Retaliation for protected activity and disparate impact discrimination (in violation of Title VII; 42 U.S.C. § 1983; and 15 U.S.C. 1681 *et seq.* ("Fair Credit Reporting Act," "FCRA"); (3) assorted negligence and intentional torts, including failure to properly train and supervise employees; (4) conspiracy on the part of NJT and its employee, Vickey Fraser, to violate 42 U.S.C. § 1983 and to commit the tort of negligent misrepresentation; (5) gender discrimination (in violation of NJLAD and Title VII); (6) continuing violation and retaliation for Plaintiff's sending a letter addressed to an NJT employee (in violation of 42 U.S.C. §1983, Title VII); and (7) conspiracy by NJT and its employee, Vickey Fraser, to violate 42 U.S.C. § 1983, Title VII and FCRA. (Compl. ¶¶ 26-32; Amnd. Compl. ¶¶ 7-19).

On January 19, 2017, NJT moved to dismiss multiple causes of action in the Complaint and Amended Complaint. (ECF No. 6 ("Motion")). In its Motion to Dismiss, NJT argued: (1)

---

[5] Though Plaintiff purports to bring causes of action under both 42 U.S.C. §§ 1981 and 1983, § 1981, itself, provides no permissible cause of action for Plaintiff. Rather, the United States Supreme Court has held that in a suit brought against a state actor, § 1983 is the exclusive federal remedy for a violation of the rights guaranteed under § 1981. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735–36 (1989). Thus, Plaintiff's § 1981 claim in effect merges with his § 1983 claim, and the Court will treat the two as a single claim.

[6] Although Plaintiff fails to identify specifically a cause of action for the alleged violations of his Fourth, Fifth and Fourteenth Amendment rights, it appears that Plaintiff is alleging a violation of these rights under 42 U.S.C.A. § 1983. Similar to Plaintiff's 42 U.S.C. §§ 1981 and 1983 claims (note 4 *supra*), Plaintiff's First, Fourth and Fourteenth Amendment claims are accordingly merged with his § 1983 claims. *See Aiken v. Township of Morris,* 1990 WL 119312, *2 (Aug. 14, 1990 D.N.J) ("Generally, relief is not awarded on a claim arising directly under the Constitution ... [r]ather, federal rights are enforceable through the procedural vehicles of 42 U.S.C. § 1983 and other civil rights statutes." (citing *Smith v. Hampton Training School for Nurses,* 360 F.2d 577, 581 (4th Cir.1966)).

3

Plaintiff's tort claims should be dismissed for failure to file timely notice under the New Jersey Tort Claims Act (N.J.S.A. 59:1-1 *et seq.* ("NJTCA"); (2) Plaintiff's intentional tort claims should be dismissed due to NJT's sovereign immunity from claims arising from intentional acts; (3) Plaintiff's Title VII claims should be limited to the allegations in his Equal Employment Opportunity Committee ("EEOC") charge and Plaintiff's Title VII gender discrimination claims should accordingly be dismissed for failure to exhaust administrative remedies; (4) Plaintiff's claims under the U.S. Constitution and 42 U.S.C. §§ 1981 and 1983 are barred by sovereign immunity and fail to state claims on which relief can be granted; (5) Plaintiff's claims under NJLAD are barred by sovereign immunity; and (6) Plaintiff's claims under FCRA should be dismissed as time-barred. (Motion at 6-18). On March 1, 2017, Plaintiff opposed NJT's Motion to Dismiss (ECF No. 14 ("Oppos.")) and on March 6, 2017, NJT replied to Plaintiff's Opposition (ECF No. 15 ("Reply")).

### B. Factual Allegations in the Complaint and Amended Complaint

Plaintiff's allegations, though not always clear, appear to focus on his not being hired by NJT because of a background check that falsely reported criminal activity and for what Plaintiff claims were discriminatory and retaliatory reasons. (Compl. ¶¶ 4, 12). Mindful of Plaintiff's *pro se* status and in an attempt to construe the Complaint and Amended Complaint liberally, the Court recounts the factual content of the Complaint and Amended Complaint in detail.

In July 2014, NJT posted on its website a listing for a bus driver instructor's position to which Plaintiff submitted his resume. (*Id.* ¶ 7). Later that month, NJT requested that Plaintiff report to a provided location to take a written examination and road test, which Plaintiff completed on August 6, 2014. (*Id.*) NJT then asked that Plaintiff return on August 13, 2014 to attend a presentation on defensive driving and to provide a five-year driver history abstract from the New

4

Jersey Motor Vehicle Commission. (*Id.*) Plaintiff completed both of these requests. (*Id.*).

On August 20, 2014, Plaintiff claims that an employee of NJT, Vickey Fraser, called Plaintiff and offered him a position as a bus driver instructor, which he accepted. (*Id.* ¶ 8). Nonetheless, Plaintiff was still required to complete a medical examination and make various corrections to and submissions of paperwork. (*Id.* ¶¶ 8-10). Plaintiff's Complaint and Amended Complaint make clear that part of this paperwork consisted of a background check. (*Id.* ¶ 11).

On September 26, 2014 and October 10, 2014, Plaintiff called Vickey Fraser to check on the status of the background check (presumably, Plaintiff could not begin work without NJT receiving it). (*Id.* ¶¶ 11-12). Also on October 10, 2014, Plaintiff received a letter from NJT stating that "a preliminary decision was made to rescind the employment offer based on the information contained in the [background check]," that Plaintiff "had a right to dispute any inaccuracy in this report," and that Plaintiff "had five days to respond to this letter, or the decision would be final." (*Id.* ¶ 12).

On October 20, 2014, Plaintiff mailed and hand-delivered his dispute of inaccuracies in the background check and met with another employee of NJT, Gina Rieder. (*Id.* ¶ 13). Gina Rieder informed Plaintiff that "once she [had] the dispute verified and corrected she would give plaintiff clearance for reinstatement and forward [his] application back to human resource[s]." (*Id.*) Plaintiff also claims to have received a confirmation from Inquiries Inc., the company that had conducted the background check in question, "that the background report was corrected and updated of its inaccurate deficiencies" and that NJT had been contacted "with the necessary correction." (*Id.*)

On November 11, 2014, Plaintiff received a call requesting an additional driver history abstract. (*Id.* ¶ 14). Plaintiff resubmitted his August 13, 2014 driver history abstract and was

5

informed that he was required to also submit a DO-21 request. (*Id.*) Plaintiff submitted a DO-21 request on November 21, 2014, after which NJT advised Plaintiff to call Vickey Fraser for a start date to begin training classes. (*Id.*)

On December 2, 2014, Plaintiff contacted NJT for a start date to begin training classes, however, he was advised that NJT was still waiting to hear from their human resources department. (*Id.* ¶ 15). On December 26, 2014, Plaintiff received a letter from NJT that his offer of employment had been withdrawn. (*Id.* ¶ 16). On December 30, 2014, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 17). Plaintiff alleges that NJT "look[ed] for and hired a female driver internal candidate after rejecting plaintiff." (Amnd. Compl. ¶ 10).

On February 5, 2015, Plaintiff submitted the required paperwork to move forward with an EEOC investigation and on June 5, 2015, learned that NJT asked for an extension of time to respond to his complaint. (Compl. ¶¶ 18-19). In August 2015, Plaintiff received a request to submit all documentation between NJT and Plaintiff, which he faxed and hand-delivered. (*Id.* ¶ 20). On October 23, 2015, Plaintiff requested another update on the status of his complaint and on February 29, 2016, requested a right to sue letter from the EEOC, which he received on September 9, 2016. (*Id.* ¶¶ 21-22, 25).

### III. LEGAL STANDARD

#### A. Rule 12(b)(1)

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rules of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d. Cir. 2007) (citing *St. Thomas-St. John Hotel Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d. Cir. 2000)).

Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and

'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). One key aspect of this case and controversy requirement is standing. *Id.* at 439. "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

To establish standing, a plaintiff must establish: (1) an "injury in fact," i.e., an actual or imminently threatened injury that is "concrete and particularized" to the plaintiff; (2) causation, i.e., traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court. *Nat'l Collegiate Athletic Ass'n v. Gov. of N.J.*, 730 F.3d 208, 218 (3d. Cir. 2013) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Although a plaintiff bears the burden of establishing the elements of standing, at the motion to dismiss stage, the Court "must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine*, 486 F.3d at 810.

**B.     Rule 12(b)(6)**

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. City of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level."

*Twombly*, 550 U.S. at 555. "A pleading that offers labels and conclusions will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations omitted). However, "the tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated... Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

## IV. DISCUSSION

For the reasons set forth below, this Court finds that Plaintiff's common law tort claims (Plaintiff's Third and portions of Plaintiff's First and Fourth Causes of Action), Plaintiff's NJLAD claims (Portions of Plaintiff's First, Fifth, and Sixth Causes of Action), Plaintiff's U.S. Constitutional claims (Portions of Plaintiff's First, Second, Fourth, Sixth and Seventh Causes of Action), Plaintiff's Title VII claims not alleged in his EEOC charge (Portions of Plaintiff's Fifth and Seventh Causes of Action) and Plaintiff's FCRA claims (Portions of Plaintiff's Second and Seventh Causes of Action) are invalid or otherwise barred in the present action. Accordingly, the Court will dismiss Plaintiff's claims in the Complaint and Amended Complaint except for Plaintiff's claims alleging racial discrimination and retaliation under Title VII (Portions of Plaintiff's First, Second and Sixth Causes of Action).

### A. Constitutional Claims

In its Motion to Dismiss, NJT argues that Plaintiff's claims under 42 U.S.C. § 1983 should

be dismissed based on sovereign immunity as NJT is considered an arm of the State of New Jersey. (Motion at 11-16, Reply at 2-3). The Court agrees that dismissal of these claims is proper.

It is well-settled that the Eleventh Amendment does not permit a damages action against a state in federal court, except where waiver is "unequivocally expressed" by either the state or Congress. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 99. Equally well-settled is the principle that this protection can extend to those entities considered an arm of the state. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996).

In order to proceed with his § 1983 claims against NJT, Plaintiff would accordingly have to demonstrate either that New Jersey has waived its Eleventh Amendment immunity or that NJT is not considered an arm of the state for Eleventh Amendment purposes, both of which would go against well-established lines of case law. Neither Congress nor New Jersey, itself, has unequivocally expressed a waiver of Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979) (in which the Supreme Court expressly held that Congress has not abrogated state sovereign immunity under § 1983 or § 1981); *Bennett v. City of Atlantic City*, 288 F.Supp.2d 675, 688 (D.N.J. 2003). *See also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (articulating that a State and its officials are not "persons" subject to suit under § 1983 when acting in their official capacities). Likewise, New Jersey has not waived its Eleventh Amendment immunity by the New Jersey Tort Claims Act, which permits suits against public entities and their employees in state courts. *Hyatt v. County of Passaic*, 340 Fed.Appx. 833, 837 (3d. Cir. 2009).

Furthermore, as this Court and others in the Third Circuit have established, NJT is considered an arm of the state of New Jersey, and as such is entitled to New Jersey's non-waived right of sovereign immunity. *Ferry v. New Jersey Transit Corp.*, 2016 WL 1670917, *2 (D.N.J. 2016) (holding that NJT is an arm of the state of New Jersey and is entitled to Eleventh Amendment

immunity); *GEOD Corp. v. New Jersey Transit Corp.*, 678 F.Supp.2d 276, 288 (D.N.J. 2009) (finding that NJT "is not autonomous from the State and ... is clearly a surrogate of the State" and accordingly that "[NJT] cannot be held liable pursuant to 42 U.S.C. § 1983"); *Smith v. New Jersey Transit Corp.*, 691 F.Supp. 888, 892 (E.D.PA 1988) (finding that NJT enjoyed Eleventh Amendment immunity and that New Jersey permitting NJT to both sue and be sued did not constitute waiver of this immunity). This Court accordingly agrees with NJT and the weight of case law supporting NJT's argument that NJT is considered an arm of the State of New Jersey, and that NJT is entitled to sovereign immunity from Plaintiff's § 1983 claims

**B.     Title VII**

NJT also argues that Plaintiff's Title VII claims should be limited to those allegations actually made in his EEOC charge (ECF No. 6-6, Exhibit 3 ("EEOC Charge")) and that Plaintiff's Title VII gender discrimination claims should accordingly be dismissed for failure to exhaust administrative remedies. (Motion at 9-10). The Court agrees that dismissal of these claims is proper. The Court does not dismiss Plaintiff's Title VII claims of racial discrimination and retaliation.

Before a plaintiff may maintain a Title VII claim in federal court, he must first file a Charge of Discrimination against the prospective defendant with the EEOC. *Anjelino v. New York Times Co.*, 200 F.3d 73, 93 (3d Cir. 1999) (citing *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976)) ("The preliminary step of the filing of the EEOC charge and the receipt of the right to sue notification are 'essential parts of the statutory plan.'"); *Robinson v. Dalton,* 107 F.3d 1018, 1020 (3d Cir.1997) (holding, in Title VII case, that plaintiff must exhaust administrative remedies prior to bringing suit in court). Indeed, the Third Circuit has previously held that "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which

10

can reasonably be expected to grow out of the charge of discrimination." *Ostapowicz* 541 F.2d at 398-99 (citing *Gamble v. Birmingham Southern R.R. Co.*, 514 F.2d 678 (5th Cir. 1975).

In his EEOC charge of discrimination, Plaintiff alleged only race discrimination, retaliation and negligent hiring.[7] (EEOC Charge at 2). In so doing, he limited future civil actions to only those which encompass similar forms of discrimination as those alleged in his EEOC charge. *Ostapowicz* 541 F.2d at 398. Plaintiff now attempts to assert a claim for gender discrimination. (Amnd. Compl. ¶¶ 7-11). Because a claim for gender discrimination could not have been reasonably expected to grow from any of the charges Plaintiff alleged in his EEOC charge, the Court finds that Plaintiff's Title VII claim of gender discrimination presents a dissimilar and novel form of discrimination from those he alleged in his EEOC charge, and as such must be dismissed for failure to exhaust administrative remedies under Title VII.

Because Plaintiff's Title VII claims alleging racial discrimination and retaliation do not suffer from any failings under rules 12(b)(1) and 12(b)(6) of the Federal Rules of Evidence, the Court does not dismiss these claims.[8]

### C. 15 U.S.C. § 1681

NJT also moves to dismiss Plaintiff's claims brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as barred by the Act's two year statute of limitations. The Court agrees that dismissal here is also proper.

FRCA's statute of limitations bars claims not brought within two years of the date Plaintiff discovers the violation that is the basis for liability under the Act or within five years after the

---

[7] Negligent hiring is a tort cause of action and as such will be addressed in the Court's discussion of Plaintiff's tort claims, *supra*.
[8] Notably, NJT correctly does not argue for the dismissal of Plaintiff's Title VII claims alleging racial discrimination and retaliation in its Motion to Dismiss. (Motion at 2).

violation occurs, whichever is sooner. 15 U.S.C. § 1681(p). While Plaintiff does not fully articulate the exact cause of action for his § 1681 cause, it appears to be based in the alleged reporting error in the background check submitted to NJT during Plaintiff's prospective hiring process. (Compl. ¶¶ 12-14). Plaintiff learned of this error on October 10, 2014 (Compl. ¶ 12), thereby, as NJT correctly notes (Mot. at 18), creating an October 10, 2016 deadline to bring any claims under the FRCA. Plaintiff did not, however, file his complaint until December 1, 2016 (Compl. at 1), nearly two months after the statute of limitations for any purported FRCA claim had run. Therefore, without need to arrive at the merits of Plaintiff's FRCA claim, the Court finds that Plaintiff's FRCA claim is beyond FRCA's two-year statute of limitations and, as such, is time-barred.

### D. Tort Claims

Plaintiff seems to assert common law tort claims in several of his causes of action, either on their own or in connection with an alleged statutory claim.[9] NJT moves to dismiss Plaintiff's common law tort claims for failure to file a Notice of Tort Claim under the New Jersey Tort Claims Act (N.J.S.A. 59:1-1 *et seq.*).[10] (Motion at 6-7). The Court agrees that dismissal is proper for this reason.

Under the New Jersey Tort Claims Act, a Plaintiff must file a Notice of Tort Claim against

---

[9] Specifically, this Court, interpreting Pro Se Plaintiff's Complaint and Amended Complaint liberally, finds that Plaintiff appears to assert common law tort claims in his First, Second and Fourth Causes of Action. (Compl. ¶¶ 26-28, 32).

[10] NJT also moves to dismiss Plaintiff's intentional tort claims for the additional reason that NJT, as an arm of the State of New Jersey, is entitled to immunity from all alleged intentional torts committed by an employee. (Motion at 8, citing N.J.S.A. 59:2-10). The Court need not arrive at this argument, however, as the Court holds that Plaintiff's tort claims against NJT must be dismissed for failure to file a Notice of Tort Claim under NJTCA.

a State entity or employee within 90 days of the accrual of a claim.[11] N.J.S.A. 59:8-8. Plaintiff's failure to do so will bar future suit.[12] *Id.* Notably, this notice requirement cannot be circumvented by Plaintiff filing a complaint. *Guzman v. City of Perth Amboy*, 214 N.J. Super 167, 171-72 (App. Div. 1986).

Here, Plaintiff's alleged tort claims arose, at latest, on December 26, 2014, the date Plaintiff received formal notice that he was not hired by NJT. (Compl. ¶ 12). Under the NJTCA, Plaintiff would accordingly have had 90 days after the December 26, 2014 date to file a notice of claim. Based on NJT's Certification of James Turner (ECF No. 6-2), which Plaintiff does not contest, Plaintiff did not file a notice of claim, or any communication which could be argued to constitute a notice of claim, within 90 days of December 26, 2014, or at any point thereafter. Accordingly, Plaintiff's common law tort claims must be dismissed for failure to provide notice of pending claim under NJTCA.

### E. N.J.L.A.D. Claims

Finally, NJT argues that Plaintiff's claims under the New Jersey Law Against Discrimination (N.J.S.A. 10:5-12 *et seq.*) are barred by NJT's right of sovereign immunity. (Motion at 16-17). The Court agrees.

---

[11] Even interpreting Plaintiff's Complaint and Amended Complaint liberally, many of Plaintiff's tort claims are not clear. Regarding the accrual dates of Plaintiff's claims, the Court therefore notes that accrual dates under NJTCA are generally the date of the accident (for negligence torts) or date on which the alleged tort was committed. *Davis v. Township of Paulsboro*, 371 F.Supp.2d 611, 618 (D.N.J. 2005). Plaintiff offers no specific claim that would involve a more recent accrual date, nor does Plaintiff offer argument as to the existence of such a claim. Accordingly, the Court agrees with NJT that Plaintiff's alleged tort claims arose no later than December 26, 2014, the date on which Plaintiff received formal notice that he would not be hired by NJT. (Motion at 7). (Discussed further *infra*).

[12] Although N.J.S.A. 59:8-9 provides for an exception to this bar at the discretion of a judge of the Superior Court of New Jersey within one year of accrual, such an exception would be inapplicable here for the simple reason that over a year has passed since accrual of Plaintiff's cause of action.

The Court's reasoning from its earlier discussion of NJT's right to sovereign immunity[13] applies here as well. NJT is an arm of the State of New Jersey and as such is only subject to suit in federal courts where waiver is unequivocally expressed by either Congress or New Jersey. *Pennhurst* 465 U.S. at 99; *Seminole Tribe* 517 U.S. at 54. Indeed, courts in this District have expressly held that NJLAD did not waive the state's immunity from suit in federal court. *Antonelli v. New Jersey*, 310 F.Supp.2d 700, 714 (D.N.J. 2004) *affirmed* 419 F.3d 267; *Bennett* 288 F.Supp.2d at 682-83 ("The NJLAD does not contain the express language required to waive the State's immunity from suit in federal court"); *Rudolph v. Adamar of N.J., Inc.*, 153 F.Supp.2d 528, 540–44 (D.N.J. 2001) (noting that nothing in the text of the NJLAD "addresses, much less expressly waives, the State's Eleventh Amendment immunity"). Accordingly, Plaintiff's NJLAD claims are barred by sovereign immunity.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is granted. Accordingly, Plaintiff's remaining causes of action are those for racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Portions of Plaintiff's First, Second and Sixth Causes of Action). To the extent Plaintiff can cure the pleading deficiency by way of amendment, Plaintiff shall have thirty (30) days to file an amended complaint. An appropriate order accompanies this opinion.

Dated: March 16, 2018

CLAIRE C. CECCHI, U.S.D.J.

---

[13] Section IV.A of this Opinion.